UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| EPHRAIM N. SHIELDS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Defendant. ) | Case No. 1:19-CV-49 |

## COMPLAINT FOR DAMAGES IN A CIVIL CASE

Plaintiff, Ephraim N. Shields ("Plaintiff"), by counsel, brings this action against the Defendant, United States of America, and, for his Complaint, alleges and says as follows:

### PARTIES

1. Ephraim N. Shields is a citizen of Fort Wayne, Indiana.

2. The Defendant is the United States of America. At all times relevant hereto, the United Stats acted through its agency, the Department of Veterans Affairs ("VA"), its subdivision, the Veterans Health Administration (VHA"), and the employees of those agencies.

3. At all times relevant herein, the Defendant employed a podiatrist, Dr. Bradley R. Hammersley ("Dr. Hammersley"), to provided podiatric medical care and treatment at the Veterans Administration Northern Indiana Health Care System ("VANIHCS") in Fort Wayne, Indiana, and Marion, Indiana.

4. At all times relevant hereto, Dr. Hammersley was acting with in the scope and course of his employment with the Defendant.

1

## JURISDICTION AND VENUE

5.  Because the United States is the Defendant in this case, the Court has jurisdiction under 28 U.S.C. §1346.

6.  The United States has waived its sovereign immunity pursuant to 5 U.S.C. §702.

7.  At all times relevant hereto, Dr. Hammersley was acting within the scope and course of his employment with the Defendant and was an "employee of the government" as defined by 28 U.S.C. §2671.

8.  Because Dr. Hammersley was an "employee fo the government" at all times relevant hereto, the Defendant is not entitled to dismissal for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

9.  Pursuant to 28 U.S.C. §1391(e)(1), venue is proper within the Northern District of Indiana, Fort Wayne Division because the events or omissions giving rise to this action occurred in this District.

10. Plaintiff has exhausted his administrative remedies pursuant to 28 U.S.C. §2675(a).

11. Pursuant to 28 U.S.C. §2675(a), Plaintiff submitted Standard Form 95 ("SF95") to the Veterans Administration, which was received on March 27, 2018, detailing his claim against the Defendant (see Exhibit 1 attached hereto).

12. On August 16, 2018, the VA sent Plaintiff a letter indicating that his claim was denied because the "tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.)" (see Exhibit 2 attached hereto).

2

13. Pursuant to 28 U.S.C. §2401(b), Plaintiff files this action "within six months after the date of mailing, by certified or registered mail, a notice of final denial of the claim by the agency to which it was presented."

14. Plaintiff first learned that the care provided to him by Dr. Hammersley was malpractice when he met with VA administrators on January 29, 2018.

15. Plaintiff could not have learned that the acts and/or omissions by Dr. Hammersley were malpractice until he met with the VA administrators on January 29, 2018.

16. There is a class-action lawsuit (*Colombini et al., v. United States*) pending before this Court to determine whether plaintiffs similarly situated with Shields can move forward with their malpractice claims.

17. Shields currently is a plaintiff in the aforementioned class-action suit.

18. Since Plaintiff is a member of the aforementioned class-action suit, Plaintiff respectfully requests that this action be continued until the superseding action has been resolved.

19. Notwithstanding the aforementioned class-action lawsuit and both in conjunction with but also in alternative to the matters raised therein, Shields further asserts (a) that his claim did not accrue until January 29, 2018, as the date wherein both his injuries and their cause were reasonably known and discovered by him or, alternatively, (b) that Defendant's negligence constituted a continuing wrong which ran through the last relevant medical visit with Defendant.

20. All conditions precedent to the filing of this action have occurred, been waived, or have otherwise been satisfied.

## STATEMENT OF FACTS

21. Shields had a service-connected injury to his left foot and ankle in 1988. In April

3

2014, he was referred to the podiatry department of the VA Medical Center after experiencing pain, instability, and stiffness in the left foot and ankle.

22. In September 2014, Shields had x-rays and an MRI performed on his left foot and ankle.

23. On November 21, 2014, Shields and his x-rays and MRI were all evaluated by Dr. Hammersley. It was noted that Shields had flat feet and parasthesia tarsal tunnel of the left foot. Dr. Hammersley then diagnosed Shields with left ankle instability, rupture of the anterior talofibular ligament, calcaneofibular ligament, and deltoid ligaments, as well as the syndesmotic ligament, tarsal tunnel syndrome and plantar fasciitis of the left foot. Dr. Hammersley affirmatively told Shields that he had these conditions during this visit wherein Dr. Hammersley persuaded Shields that surgery was necessary.

24. By the Defendant's own admission, the MRI did not support the diagnosis made by Dr. Hammersley and, in fact, showed normal radiologic findings.

25. Unbeknownst to Shields, the MRI from September 3, 2014, merely showed some arthritis in the ankle joint and unremarkable ligaments, other than the anterior talofibular ligament was mildly thickened and the deltoid ligament had an osseus fragment interposed that was replaced by scar tissue.

26. Based upon a diagnosis Shields could not have known was unsupported, he consented Dr. Hammersley to perform major surgery on Shields on July 31, 2015. That surgery included a tightrope hardware being inserted to repair syndesmosis when the syndesmosis was not injured. The hardware and surgery was completely unnecessary. Anterior talofibular ligament and calcaneofibular ligament also did not need repaired. Human Dermal Graft used on

4

an initial surgery is not usually indicated in this situation and was unnecessary. It was never documented that Shields ever had any issues related to plantar fascia. Tarsal tunnel decompression was not indicated.

27. Shields was seen by Dr. Hammersley for regular follow-up in the months following surgery, leading up to a return to work in December 2015. Dr. Hammersley continued to assure Shields that his recovery was as expected.

28. On July 12, 2016, Shields was seen by Dr. Holly Becker ("Dr. Becker") for left foot and ankle pain and tingling/pain across the top of his foot. Through this date of Shields' last relevant office visit with Defendant for his left foot/ankle, Defendant continued to hold to the original negligent misdiagnosis made by Dr. Hammersley, and no other cause of injury could have reasonably been known by Shields.

29. Subsequent testing ordered by Dr. Becker and performed August 8, 2016 led to the diagnosis that Plaintiff had developed Chronic Neurological Complex Regional Pain Syndrome, type 1, of the left ankle. Shields' condition presently is such that no further surgeries are recommended and the unnecessary hardware cannot be removed.

30. Shields had no reason to know until the January 29, 2018, meeting with VA officials that he had injury caused by an unnecessary major surgery rather than a result of the underlying conditions misdiagnosed by Defendant via Dr. Hammersley prior to surgery.

## CAUSES OF ACTION

### COUNT I – NEGLIGENCE

31. The Plaintiff realleges and reincorporates each and every allegation above as if fully set forth herein.

5

32. The Defendant had a duty to provide health care to Shields using the degree of care and skill that a reasonably careful, skillful, and prudent health care provider would use under the same or similar circumstances.

33. According to the Institutional Disclosure of Adverse Event ("Disclosure") from the VA dated February 5, 2018 (reflecting the notes of the meeting of January 29, 2018, attached hereto as Exhibit 3), Dr. Hammersley committed malpractice by failing to properly diagnose and treat Shields and by performing surgery that the diagnostic tests did not support.

34. Care via the VA Medical Center, specifically including but not limited to care provided by Dr. Hammersley, fell below the required standard of care and was negligent (constituting malpractice as defined by Indiana Code §34-18-1-1 et seq). Said negligence included but is not limited to:

    A. Misdiagnosis and/or negligent misrepresentation of Shields' underlying medical condition;

    B. Misinterpretation of prior x-rays and MRIs;

    C. Tightrope hardware being inserted to repair syndesmosis when the syndesmosis was not injured;

    D. The hardware and surgery was completely unnecessary;

    E. Anterior talofibular ligament and calcaneofibular ligament also did not need repaired;

    F. Human Dermal Graft used on an initial surgery is not usually indicated in this situation and was unnecessary;

    G. It was never documented that Claimant ever had any issues related to

6

        plantar fascia; and

        H.    Tarsal tunnel decompression was not indicated.

35.    Defendant breached its duty of care to Shields by failing to exercise that reasonable care required, thereby committing medical negligence.

36.    On January 29, 2018, Shields was notified by VA administrators that he was the victim of malpractice at the hands of Dr. Hammersley and that Shields had the right to file a claim against the VA.

37.    In the February 5, 2018, written Disclosure, the VA admitted that Dr. Hammersley committed malpractice in connection with his care and treatment of Shields.

38.    As a direct and proximate result of the negligence of Defendant, Shields underwent an unnecessary major surgery which has further produced permanent ongoing pain, as well as increased pain beyond his original symptoms, and Shields must now permanently live with hardware in his left foot and ankle which was otherwise unnecessary, as well as all limitations associated therewith.

39.    As a direct and proximate result of the negligence of Defendant, Shields has further experienced a loss in quality and enjoyment of life.

40.    The negligence of Defendant was a responsible cause in producing injury, damages, and losses including, but not limited to, all applicable elements/categories of damages as set forth in Indiana Model Civil Jury Instructions 703.

41.    In support of Shields' jurisdictional assertion that his claim did not accrue until January 29, 2018, it was not until that day that Shields discovered or had reason to know that the symptoms he experienced following the July 31, 2015, surgery were the result of harm inflicted

7

from that surgery, rather than from the underlying conditions which he had been falsely and negligently induced to believe he had.

## COUNT II – LACK OF INFORMED CONSENT

42. The Plaintiff realleges and reincorporates each and every allegation above as if fully set forth herein.

43. Consent obtained by the Defendant from Shields for the July 31, 2015, surgery was obtained negligently and, as such, was not an "informed" consent in as much as Shields' consent to the surgical procedure was based upon the negligently false and incorrect diagnosis made by Dr. Hammersley.

44. Because the surgery lacked such informed consent, Shields was subjected to a procedure which, in retrospect, was completely unauthorized and resulted essentially in a negligently-induced unwanted touching.

45. From Shields' perspective, this is akin to receiving a "medical battery" under Indiana law, though it is not alleged herein that the Defendant's conduct was an intentional act, being instead born of negligence.

46. As a result of the procedure which was performed without the necessary informed consent, Shields directly and proximately received injuries including:

    A. Tightrope hardware being inserted to repair syndesmosis when the syndesmosis was not injured;

    B. The implementation of hardware which was completely unnecessary;

    C. Multiple components of the surgical procedure which caused damage or "repaired damage" which was not there, inflicting physical harm; and

8

      D.      Negligent infliction of emotional distress.

47. Because Shields had no reason to know that the surgery had been performed based upon a misrepresentation/misdiagnosis of his condition, he had no reason to know that the consent he had been asked to give previously was invalid and uninformed. As such, Shields did not know that he had a specific injury resulting from the failed informed consent until the date of the disclosure meeting on January 29, 2018.

48. Based upon the foregoing paragraphs, Shields' claim for damages resulting from the surgical performed without consent did not accrue until the date of the disclosure meeting on January 29, 2018, at the earliest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant and respectfully requests compensatory damages that are commensurate with the harm suffered by Plaintiff and for all losses, injuries, and damages, including the costs of this action, and for all other just and proper relief in these premises. Plaintiff also requests an order continuing any further proceedings in this case until the aforementioned, superseding class-action lawsuit is decided.

Pursuant to 28 U.S.C. §2675(b), Plaintiff seeks damages equal to the amount that Plaintiff presented to the VA in his SF95. If any newly discovered evidence not reasonably discoverable at that time of the filing of the SF95 is discovered, Plaintiff reserves the right to claim damages in excess of the damages sought in the SF95.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an

9

improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reserving existing law; (3) the factual contention have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted this 11th day of February 2019,

*/s/ Dennis R. Brown*
Dennis R. Brown (20813-49)
GEISLEMAN & BROWN, LLP
Harrison Place, Suite 100
919 South Harrison Street
Fort Wayne, IN 46802
(260) 420-2001

*/s/ Dennis H. Geisleman*
Dennis H. Geisleman (8254-02)
GEISLEMAN & BROWN, LLP
Harrison Place, Suite 100
919 South Harrison Street
Fort Wayne, IN 46802
(260) 420-2001

10