UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| EPHRAIM N. SHIELDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:19CV49 |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant, United States of America ("United States"), by its attorneys, Thomas L. Kirsch II, United States Attorney for the Northern District of Indiana, through Orest Szewciw, Assistant United States Attorney, Deborah M. Leonard, Assistant United States Attorney, and Lauren Waxler, Assistant United States Attorney, for said District, answers Plaintiff's Complaint for Damages in a Civil Case as follows:

## PARTIES

1.      Ephraim N. Shields is a citizen of Fort Wayne, Indiana.

**ANSWER:**   The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation in paragraph 1 and therefore denies same.

1

2.     The Defendant is the United States of America.  At all times relevant hereto, the United States acted through its agency, the Department of Veterans Affairs ("VA"), its subdivision, the Veterans Health Administration (VHA"), and the employees of those agencies.

**ANSWER:** Admit.

3.     At all times relevant herein, the Defendant employed a podiatrist, Dr. Bradley R. Hammersley ("Dr. Hammersley"), to provided podiatric medical care and treatment at the Veterans Administration Northern Indiana Health Care System ("VANIHCS") in Fort Wayne, Indiana, and Marion, Indiana.

**ANSWER:** Admit.

4.     At all times relevant hereto, Dr. Hammersley was acting within the scope and course of his employment with the Defendant.

**ANSWER:** Admit.

## JURISDICTION AND VENUE

5.     Because the United States is the Defendant in this case, the Court has jurisdiction under 28 U.S.C. §1346.

**ANSWER:** Admit.

6.     The United States has waived its sovereign immunity pursuant to 5 U.S.C. §702.

**ANSWER:** Deny.

7.     At all times relevant hereto, Dr. Hammersley was acting within the scope and course of his employment with the Defendant and was an "employee of the government" as defined by 28 U.S.C. §2671.

**ANSWER:** Admit.

8.     Because Dr. Hammersley was an "employee of the government" at all times relevant hereto, the Defendant is not entitled to dismissal for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

**ANSWER:** Paragraph 8 states a legal conclusion to which no answer is required. To the extent an answer is required, the United States denies the allegations in paragraph 8.

9.     Pursuant to 28 U.S.C. §1391(e)(1), venue is proper within the Northern District of Indiana, Fort Wayne Division because the events or omissions giving rise to this action occurred in this District.

**ANSWER:**   The United States admits that venue is proper, but denies that the events or omissions alleged to give rise to this action occurred.

10.     Plaintiff has exhausted his administrative remedies pursuant to 28 U.S.C. §2675(a).

**ANSWER:** Admit.

11.    Pursuant to 28 U.S.C. §2675(a), Plaintiff submitted Standard Form 95 ("SF95") to the Veterans Administration, which was received on March 27, 2018, detailing his claim against the Defendant (see Exhibit 1 attached hereto).

**ANSWER:** Admit.

12.    On August 16, 2018, the VA sent Plaintiff a letter indicating that his claim was denied because the "tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.)" (see Exhibit 2 attached hereto).

**ANSWER:** Admit.

13.    Pursuant to 28 U.S.C. §2401(b), Plaintiff files this action "within six months after the date of mailing, by certified or registered mail, a notice of final denial of the claim by the agency to which it was presented."

**ANSWER:** Admit.

14.    Plaintiff first learned that the care provided to him by Dr. Hammersley was malpractice when he met with VA administrators on January 29, 2018.

**ANSWER:** Deny.

15.    Plaintiff could not have learned that the acts and/or omissions by

Dr. Hammersley were malpractice until he met with the VA administrators on January 29, 2018.

**ANSWER:** Deny.

16.     There is a class-action lawsuit (*Colombini et al., v. United States*) pending before this Court to determine whether plaintiffs similarly situated with Shields can move forward with their malpractice claims.

**ANSWER:** Deny.

17.     Shields currently is a plaintiff in the aforementioned class-action suit.

**ANSWER:** Deny.

18.     Since Plaintiff is a member of the aforementioned class-action suit, Plaintiff respectfully requests that this action be continued until the superseding action has been resolved.

**ANSWER:**  Paragraph 18 is a request for relief to which no response is required.  To the extent a response is required the United States asserts that there is no pending class action suit to resolve.

19.     Notwithstanding the aforementioned class-action lawsuit and both in conjunction with but also in alternative to the matters raised therein, Shields further asserts (a) that his claim did not accrue until January 29, 2018, as the date wherein both his injuries and their cause were reasonably

known and discovered by him or, alternatively, (b) that Defendant's negligence constituted a continuing wrong which ran through the last relevant medical visit with Defendant.

**ANSWER:** Paragraph 19 states a legal conclusion to which no answer is required. To the extent an answer is required, the United States denies the allegations in paragraph 19, and specifically denies that it was negligent or caused Plaintiff injuries.

20.    All conditions precedent to the filing of this action have occurred, been waived, or have otherwise been satisfied.

**ANSWER:** Admit.

## STATEMENT OF FACTS

21.    Shields had a service-connected injury to his left foot and ankle in 1988.  In April 2014, he was referred to the podiatry department of the VA Medical Center after experiencing pain, instability, and stiffness in the left foot and ankle.

**ANSWER:** The United States admits that Shields had a service-connected injury to his left foot and ankle in 1988 and that in February 2014 he was referred to the podiatry department of the VA Medical Center after experiencing pain, instability, and stiffness in the left foot and ankle.

22.    In September 2014, Shields had x-rays and an MRI performed on

6

his left foot and ankle.

**ANSWER:**   The United States admits that Shields had an MRI performed on his left foot and ankle in September 2014, but denies remaining allegations.

23.   On November 21, 2014, Shields and his x-rays and MRI were all evaluated by Dr. Hammersley.  It was noted that Shields had flat feet and parasthesia tarsal tunnel of the left foot.  Dr. Hammersley then diagnosed Shields with left ankle instability, rupture of the anterior talofibular ligament, calceneofibular ligament, and deltoid ligaments, as well as the syndesmotic ligament, tarsal tunnel syndrome and plantar fasciitis of the left foot.  Dr. Hammersley affirmatively told Shields that he had these conditions during this visit wherein Dr. Hammersley persuaded Shields that surgery was necessary.

**ANSWER:** The United States admits that on November 21, 2014, Shields was evaluated by Dr. Hammersley who reviewed Shields' x-rays and MRI, that it was noted that Shields had decreased calcaneal inclination angle and paresthesia tarsal tunnel of the left foot, and that Dr. Hammersley diagnosed Shields with bilateral ankle pain with chronic instability, plantar fasciitis, and tarsal tunnel syndrome.   The United States is without information to admit or deny whether Dr. Hammersley affirmatively told

Shields he had all the conditions set forth in paragraph 23 during this visit, and therefore denies the same. The United States denies the remaining allegations.

24.    By the Defendant's own admission, the MRI did not support the diagnosis made by Dr. Hammersley and, in fact, showed normal radiologic findings.

**ANSWER:** Deny.

25.    Unbeknownst to Shields, the MRI from September 3, 2014, merely showed some arthritis in the ankle joint and unremarkable ligaments, other than the anterior talofibular ligament was mildly thickened and the deltoid ligament had an osseus fragment interposed that was replaced by scar tissue.

**ANSWER:** The United States admits that the September 3, 2014 MRI report showed arthritis in the ankle joint, mild thickening of the anterior talofibular ligament, and that the deltoid ligament had an osseous fragment interposed within the expected location of the deltoid ligament that appeared to be replaced by scar tissue, but denies remaining allegations.

26.    Based upon a diagnosis Shields could not have known was unsupported, he consented Dr. Hammersley to perform major surgery on Shields on July 31, 2015. That surgery included a tightrope hardware being

inserted to repair syndesmosis when the syndesmosis was not injured. The hardware and surgery was completely unnecessary. Anterior talofibular ligament and calcaneofibular ligament also did not need repaired. Human Dermal Graft used on an initial surgery is not usually indicated in this situation and was unnecessary. It was never documented that Shields ever had any issues related to plantar fascia. Tarsal tunnel decompression was not indicated.

**ANSWER:** The United States admits that Shields consented to surgery on July 31, 2015, that the surgery included a tightrope hardware being inserted to repair syndesmosis, and that the tightrope hardware was not necessary, but denies the remaining allegations.

27. Shields was seen by Dr. Hammersley for regular follow-up in the months following surgery, leading up to a return to work in December 2015. Dr. Hammersley continued to assure Shields that his recovery was as expected.

**ANSWER:** The United States admits that Shields was seen by Dr. Hammersley for regular follow-up following surgery, leading up to a return to work in December 2015. The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegation in paragraph 27 and therefore denies same.

9

28.    On July 12, 2016, Shields was seen by Dr. Holly Becker ("Dr. Becker") for left foot and ankle pain and tingling/pain across the top of his foot.  Through this date of Shields' last relevant office visit with Defendant for his left foot/ankle, Defendant continued to hold to the original negligent misdiagnosis made by Dr. Hammersley, and no other cause of injury could have reasonably been known by Shields.

**ANSWER:**   The United States admits that Shield was seen by Dr. Holly Becker on July 12, 2016 for left foot and ankle pain and tingling across the top of his foot.   The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, and therefore denies the same.

29.    Subsequent testing ordered by Dr. Becker and performed on August 8, 2016, led to the diagnosis that Plaintiff had developed Chronic Neurological Complex Regional Pain Syndrome, type I, of the left ankle. Shields' condition presently is such that no further surgeries are recommended and the unnecessary hardware cannot be removed.

**ANSWER:**   The United States admits that Plaintiff was diagnosed with Complex Regional Pain Syndrome, type I, on the left ankle, but denies the remaining allegations.

30.    Shields had no reason to know until the January 29, 2018,

10

meeting with VA officials that he had injury caused by an unnecessary major surgery rather than a result of the underlying conditions misdiagnosed by Defendant via Dr. Hammersley prior to surgery.

**ANSWER:**    The United States lacks knowledge or information sufficient to form a belief about the truth of what Shields knew or should have known, and therefore denies the same.   The United States further denies that Shields had an injury caused by an unnecessary major surgery performed by Defendant.

## CAUSES OF ACTION

## COUNT I – NEGLIGENCE

31.    The Plaintiff realleges and reincorporates each and every
      allegation above as if fully set forth herein.

**ANSWER:**   The United States restates its answer to each and every allegation above.

32.    The Defendant had a duty to provide health care to Shields using the degree of care and skill that a reasonably careful, skillful, and prudent health care provider would use under the same or similar circumstances.

**ANSWER:**   Paragraph 32 states a legal conclusion to which no answer is required.   To the extent an answer is required, the United States admits that the standard of care owed by a physician to a patient is that degree of

11

care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which the physician belongs, acting under the same or similar circumstances.

33. According to the Institutional Disclosure of Adverse Event ("Disclosure") from the VA dated February 5, 2018 (reflecting the notes of the meeting of January 29, 2018, attached hereto as Exhibit 3), Dr. Hammersley committed malpractice by failing to properly diagnose and treat Shields and by performing surgery that the diagnostic tests did not support.

**ANSWER:**   The United States denies that the Disclosure states that Dr. Hammersley committed malpractice, and denies in fact that Dr. Hammersley committed malpractice.

34. Care via the VA Medical Center, specifically including but not limited to care provided by Dr. Hammersley, fell below the required standard of care and was negligent (constituting malpractice as defined by Indiana Code §34-18-1-1 et seq).  Said negligence included but is not limited to:

A.   Misdiagnosis and/or negligent misrepresentation of Shields' underlying medical condition;

**ANSWER:**  Deny.

B.   Misinterpretation of prior x-rays and MRIs;

**ANSWER:**   Deny.

12

C.      Tightrope hardware being inserted to repair syndesmosis

when the syndesmosis was not injured;

**ANSWER:**   The United States admits that Dr. Hammersley

inserted tightrope hardware to repair the syndesmosis when it was not

necessary.

D.      The hardware and surgery was completely unnecessary;

**ANSWER:**   The United States admits that the tightrope

hardware was unnecessary, but denies remaining allegations.

E.      Anterior talofibular ligament and calcaneofibular ligament

also did not need repaired;

**ANSWER:** Deny.

F.      Human Dermal Graft used on an initial surgery is not

usually indicated in this situation and was unnecessary;

**ANSWER:** Deny.

G.      It was never documented that Claimant ever had any

issues related to plantar fascia; and

**ANSWER:**   Deny.

H.      Tarsal tunnel decompression was not indicated.

**ANSWER:**   Deny.

35.   Defendant breached its duty of care to Shields by failing to

exercise that reasonable care required, thereby committing medical negligence.

**ANSWER:** The United States denies paragraph 35, but admits that the syndesmosis repair was unnecessary.

36. On January 29, 2018, Shields was notified by VA administrators that he was the victim of malpractice at the hands of Dr. Hammersley and that Shields had the right to file a claim against the VA.

**ANSWER:** The United States admits that on January 29, 2017, Mr. Shields was told he had a right to file claim against the VA, but denies the remaining allegations in paragraph 36, and specifically denies that he was notified that he was the victim of malpractice.

37. In the February 5, 2018, written Disclosure, the VA admitted that Dr. Hammersley committed malpractice in connection with his care and treatment of Shields.

**ANSWER:** Deny.

38. As a direct and proximate result of the negligence of Defendant, Shields underwent an unnecessary major surgery which has further produced permanent ongoing pain, as well as all limitations associated therewith, and Shields must now permanently live with hardware in his left foot and ankle which was otherwise unnecessary, as well as all limitations associated

14

therewith.

**ANSWER:** Deny.

39.    As a direct and proximate result of the negligence of Defendant, Shields has further experienced a loss in quality and enjoyment of life.

**ANSWER:** Deny.

40.    The negligence of Defendant was a responsible cause in producing injury, damages, and losses including, but not limited to, all applicable elements/categories of damages as set forth in Indiana Model Civil Jury Instructions 703.

**ANSWER:** Paragraph 40 is a request for relief for which no response is required but, to the extent a response is required, the United States denies that Plaintiff is entitled to any damages.

41.    In support of Shields' jurisdictional assertion that his claim did not accrue until January 29, 2018, it was not until that day that Shields discovered or had reason to know that the symptoms he experienced following the July 31, 2015, surgery were the result of harm inflicted from that surgery, rather than from the underlying conditions which he had been falsely and negligently induced to believe he had.

**ANSWER:** Deny.

## COUNT II – LACK OF INFORMED CONSENT

42.   The Plaintiff realleges and reincorporates each and every allegation above as if fully set forth herein.

**ANSWER:**  The United States restates its answer to each and every allegation above.

43.   Consent obtained by the Defendant from Shields for the July 31, 2015, surgery was obtained negligently and, as such, was not an "informed" consent in as much as Shields' consent to the surgical procedure was based upon the negligently false and incorrect diagnosis made by Dr. Hammersley.

**ANSWER:**  Deny.

44.   Because the surgery lacked such informed consent, Shields was subjected to a procedure which, in retrospect, was completely unauthorized and resulted essentially in a negligently-induced unwanted touching.

**ANSWER:**  Deny.

45.   From Shields' perspective, this is akin to receiving a "medical battery" under Indiana law, though it is not alleged herein that the Defendant's conduct was an intentional act, being instead born of negligence.

**ANSWER:**  Deny.

46.   As a result of the procedure which was performed without the necessary informed consent, Shields directly and proximately received injuries including:

16

      A.    Tightrope hardware being inserted to repair syndesmosis when the syndesmosis was not injured;

**ANSWER:** The United States admits that the tightrope hardware was inserted to repair the syndesmosis when the syndesmosis repair was not required and may have caused pain during the post-operative healing process, but denies that the hardware resulted in any persistent or permanent injury.

      B.    The implementation of hardware which was completely unnecessary;

**ANSWER:** The United States admits that the implementation of the tightrope hardware was unnecessary and may have caused pain during the post-operative healing process, but denies that the hardware resulted in any persistent or permanent injury.

      C.    Multiple components of the surgical procedure which caused damage or "repaired damage" which was not there, inflicting physical harm; and

**ANSWER:** Deny.

      D.    Negligent infliction of emotional distress.

**ANSWER:** Deny.

47.   Because Shields had no reason to know that the surgery had been

performed based upon a misrepresentation/misdiagnosis of his condition, he had no reason to know that the consent he had been asked to give previously was invalid and uninformed. As such, Shields did not know that he had a specific injury resulting from the failed informed consent until the date of the disclosure meeting on January 29, 2018.

**ANSWER:** Deny.

48.     Based upon the foregoing paragraphs, Shields' claim for damages resulting from the surgery performed without consent did not accrue until the date of the disclosure meeting on January 29, 2018, at the earliest.

**ANSWER:** Paragraph 48 states a legal conclusion to which no answer is required. To the extent an answer is required, the United States denies the allegations in paragraph 48, and specifically denies that Shields is entitled to any damages.

## GENERAL DENIAL

The United States denies each and every allegation requiring an answer not heretofore admitted or denied.

## AFFIRMATIVE DEFENSES

1.     The Indiana doctrine of contributory negligence applies to eliminate any recovery against the United States.

WHEREFORE, having fully answered Plaintiff's complaint, the United States respectfully prays that Plaintiff take nothing by his complaint and for such further relief as is just and proper.

Respectfully submitted,

THOMAS L. KIRSCH II
UNITED STATES ATTORNEY

By:     /s/ *Deborah M. Leonard*
        Deborah M. Leonard
        Assistant United States Attorney
        Northern District of Indiana
        1300 South Harrison Street, Room 3128
        Fort Wayne, IN 46802-3489
        Telephone: (260) 422-2595
        Fax: (260) 426-1616
        Email: deborah.leonard@usdoj.gov

By:     /s/ *Lauren Waxler*
        Lauren Waxler
        Assistant United States Attorney
        Northern District of Indiana
        5400 Federal Plaza, Suite 1500
        Hammond, IN 46320
        Telephone: (219) 937-5500
        Fax: (219) 852-2770
        Email: lauren.waxler@usdoj.gov